USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug. 13, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X

NEW ASIA ENTERPRISES LTD.,                  :
                                            :
                    Plaintiff,              :
                                            :     No. 13 Civ. 5271 (JFK)
        -against-                           :
                                            :     **OPINION & ORDER**
FABRIQUE, LTD.,                             :
                                            :
                    Defendant.              :
---------------------------------X

<u>APPEARANCES</u>

        For Plaintiff New Asia Enterprises Ltd.:
            PRYOR CASHMAN LLP
            By:  Bryan T. Mohler

        For Defendant Fabrique, Ltd.:
            ZANGARI COHN CUTHBERTSON P.C.
            By:  Steven C. Rickman
                 Cristina Salamone

            HOLLAND & KNIGHT LLP
            By:  Steven Raffaele

**JOHN F. KEENAN, United States District Judge:**

        Before the Court is Defendant Fabrique, Ltd.'s ("Fabrique")

motion to dismiss Plaintiff New Asia Enterprises Ltd.'s ("New

Asia") complaint for lack of personal jurisdiction and lack of

capacity to sue, and, alternatively, to transfer to the District

of Connecticut.[1]  For the reasons that follow, Fabrique's motion

is denied in its entirety.

---

[1] Defendant also moved to dismiss for improper venue but has since
withdrawn that motion.  Venue is proper here because the action was
removed from the New York Supreme Court in New York County.  <u>See</u> 28
U.S.C. § 1441(a).

## I. Background

Unless otherwise noted, the following facts are drawn from the complaint[2] and the declarations submitted by both parties in relation to this motion.  New Asia is a corporation organized and existing under the laws of the People's Republic of China (Hong Kong), with its principal place of business in Speonk, New York. (Compl. ¶ 6.)  Its president is Richard Grant. (Grant Decl. ¶ 1.)  New Asia is a buying agent on behalf of U.S.-based businesses seeking to manufacture goods in China.  As a buying agent, Plaintiff locates factories in China, negotiates prices, oversees the shipping of goods from China, and provides quality control services. (Comp. ¶ 11–12.)

Fabrique is a corporation organized under the laws of Connecticut, with its principal place of business in Stony Creek, Connecticut. (Sears Decl. ¶ 1.)  Its president is Francine Farkas Sears. (Id.)  Fabrique designs, manufactures, and sells cases for electronic goods (e.g., computer laptop cases) and luggage.  Many of its products are manufactured in Chinese factories.  Defendant engaged New Asia to act as its buying agent in China. (Compl. ¶ 14–16.)

According to New Asia, it entered into an overarching agreement to provide "buying agent services" to Fabrique in

---

[2] The complaint is Exhibit A of the notice of removal.

exchange for 5 percent commissions on orders placed with factories New Asia introduced to Fabrique. (Id. ¶¶ 15-17.)   The parties also allegedly agreed that Fabrique would not work directly with those factories because they were exclusively New Asia's sources, and that New Asia would protect Fabrique's designs to the best of New Asia's ability. (Id. ¶ 18.) Defendant disputes the existence of an overarching agreement and asserts that there were a series of agreements on an order-by-order basis.

New Asia brought this action in New York County Supreme Court, alleging breach of contract and seven other claims arising out of its contractual relationship with Fabrique. Defendant removed the action to this Court.   New Asia seeks damages caused by Fabrique's alleged bad faith repudiation of the agreement between the parties.   Plaintiff alleges that Defendant breached the overarching contract, failed to pay commissions, and fraudulently induced New Asia to rely on the contract.

Defendant now moves to dismiss the complaint for lack of personal jurisdiction and because New Asia lacks the capacity to sue under N.Y. Bus. Corp. Law § 1312(a).   In the alternative, Fabrique moves to transfer the action to the District of Connecticut.   Both sides submitted declarations that they have asked the Court to consider in deciding this motion.

## II. Discussion

### A. Lack of Personal Jurisdiction

#### 1. Legal Standard

The showing a plaintiff must make to defeat a motion to dismiss for lack of personal jurisdiction "varies depending on the procedural posture of the litigation." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013)  Where, as here, the motion is to be decided on declarations or affidavits instead of a full evidentiary hearing, a plaintiff only needs to make a prima facie showing of jurisdiction. See S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010).  At this juncture, it is inappropriate for a court to resolve disputes in a defendant's favor, even if defendant presents "direct, highly specific testimonial evidence regarding a fact essential to jurisdiction." Dorchester Fin. Sec., 722 F.3d at 86 & n.4 (internal quotation marks omitted).  Thus, a court must construe the jurisdictional facts in the light most favorable to the plaintiff. See S. New Eng. Tel., 624 F.3d at 138.

In diversity cases brought before this Court, personal jurisdiction is determined by New York law. See DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (per curiam).  A court may exercise specific jurisdiction under New

York's long-arm statute, N.Y. C.P.L.R. § 302, or general jurisdiction under N.Y. C.P.L.R. § 301.

Under N.Y. C.P.L.R. § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary when (1) the non-domiciliary transacts business in New York and (2) the cause of action arises from that New York business transaction. See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013).  Whether a company transacts business in New York is evaluated by the totality of the circumstances, with relevant factors including

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; [and] (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship . . . .

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) (internal quotation marks omitted).  A claim arises from the transaction if there is an "articulable nexus" or "substantial relationship" between the transaction and the cause of action. Kronisch v. United States, 150 F.3d 112, 130 (2d Cir. 1998).

A non-domiciliary is subject to general jurisdiction if it is "doing business" in New York, meaning it is "engaged in continuous, permanent, and substantial activity in New York." Wiwa v. Royal Dutch Petro. Co., 226 F.3d 88, 95 (2d Cir. 2000) (internal quotation marks omitted).  Relevant considerations

include whether the defendant (1) maintains a New York office;
(2) solicits business in New York; (3) owns property or bank
accounts in New York; or (4) has employees present within New
York. See Saudi v. Marine Atlantic, Ltd., 306 F. App'x 653, 655
(2d Cir. 2009); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763
F.2d 55, 58 (2d Cir. 1985) (collecting New York cases); Phillips
v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 226 (S.D.N.Y. 2013).
No connection to the cause of action is required. See Bohn v.
Bartels, 620 F. Supp. 2d 418, 425 (S.D.N.Y. 2007).

The Court must also determine whether the exercise of
jurisdiction is consistent with due process. See Licci, 732 F.3d
at 168. In order for the exercise of personal jurisdiction over
a defendant to comport with due process, the plaintiff must
allege that (1) the defendant has "certain minimum contacts"
with the forum and (2) exercise of the court's jurisdiction
would be "reasonable" under the circumstances. In re Terrorist
Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013).

## 2. Analysis

In its complaint, New Asia asserts that Fabrique
"systematically and purposefully engaged in activity" in New
York and "availed itself of the privileges and benefits of the
State of New York by transacting business in the State." (Compl.
¶ 8.) Fabrique claims that it is not "doing business" in New
York and has not transacted any business in New York, let alone

business that is related to New Asia's legal claim. (Def. Mem. 8-15.)

Both parties agree that their respective presidents, Sears (Fabrique) and Grant (New Asia), had two meetings in New York in January 2003 - the first at Sears's New York apartment and the second at a restaurant.  According to New Asia, these meetings included negotiations and an oral agreement[3] to the material terms of the alleged overarching contract at issue. (Grant Decl. ¶¶ 15-18; Tr. 13.)  The negotiations allegedly included discussions about New Asia's customary terms and commission structure, the need for Fabrique to use New Asia to place orders at factories provided by New Asia, and the requirement that Fabrique pay New Asia commissions on any order placed at one of the factories introduced to Fabrique by New Asia. (Grant Decl. ¶¶ 15, 17.)  The alleged terms of the agreement include (1) a 5 percent commission on all orders Fabrique placed with the Chinese factories introduced to Fabrique by New Asia; (2) that Fabrique could not work directly with New Asia's suppliers; and (3) that New Asia would protect against the use of Fabrique's designs so as to protect Fabrique's ownership of those designs.

---

[3] Fabrique argues that an oral agreement would be unenforceable under the statute of frauds because the alleged agreement involved purchases over $500. (Def.'s Reply Mem. 4 n.3.)  The Court declines to reach this merits issue at this time as it was first raised in reply and not fully briefed.  The Court notes, however, that the alleged contract does not appear to be for the sale of goods within the meaning of N.Y. U.C.C. Law § 2-201.

(Compl. ¶¶ 17–18; Grant Decl. ¶ 18.)  New Asia also alleges that Grant had subsequent meetings in New York with Sears and other Fabrique employees to discuss ongoing business between the companies. (Grant Decl. ¶ 22.)

Fabrique acknowledges that there was a business component to the preliminary meetings where the parties discussed "the possibility of doing business together in China" and engaged in "preliminary negotiations," but denies entering into a contract with New Asia during the New York meetings, and denies ever entering into an overarching commission contract. (Sears Decl. ¶¶ 16–18; Supp. Sears Decl. ¶ 6–7; Tr. 6.)  According to Fabrique, Grant's subsequent meetings with Sears "were solely in the nature of status updates, courtesy visits and social get-togethers." (Supp. Sears Decl. ¶ 28.)  Fabrique also provides an invoice as well as emails from Grant sent after the January 2003 meeting that indicate commissions of less than or greater than 5 percent. (Sears Decl. Ex. H; Supp. Sears Decl. Exs. A–F.) Fabrique argues that these exhibits show that there was no overarching agreement entered into in January 2003.

The jurisdictional analysis is slightly complicated by an overlap with the merits because the existence of an overarching agreement is disputed.  However, the Court need not reach the merits at this time because the Court must view the facts in the light most favorable to New Asia and resolve any factual

disputes in New Asia's favor. See Dorchester Fin. Sec., 722 F.3d at 85–86.  Thus, Fabrique's denial of the overarching agreement does not preclude the Court from exercising personal jurisdiction over Fabrique. See First Wall Street Capital Corp. v. Int'l Prop. Corp., No. 97 Civ. 0702, 1998 WL 338105, at *4 (S.D.N.Y. June 24, 1998) (finding personal jurisdiction after accepting plaintiff's claim of a global agreement); see also Emerald Asset Advisors, LLC v. Schaffer, 895 F. Supp. 2d 418, 434 (E.D.N.Y. 2012) (noting that courts have the discretion to deny motions to dismiss for lack of personal jurisdiction where the merits overlap with the jurisdictional issue).  This is true even though Fabrique claims that it has refuted New Asia's allegations. See Dorchester Fin. Sec., 722 F.3d at 86 & n.4 (rejecting a standard that would allow defendant's unrefuted "highly specific testimonial evidence" to defeat plaintiff's claim of personal jurisdiction on a motion to dismiss).

    Resolving the doubts regarding the overarching agreement in New Asia's favor, Plaintiff has satisfied its jurisdictional burden.  As the agreement was allegedly negotiated and made in New York, this would be the "clearest sort of case" for New York long-arm jurisdiction. George Reiner & Co. v. Schwartz, 41 N.Y.2d 648, 653 (1977); see also Construcciones Integrales del Carmen S.A. DE C.V. v. Sealion Shipping Ltd., No. 09 Civ. 1338, 2009 WL 666888, at *3 (Mar. 13, 2009).  Moreover,

negotiations that take place in New York and substantially advance a business relationship culminating in a contract are alone sufficient for a prima facie showing of transacting business for specific personal jurisdiction. See, e.g., Ainbinder v. Potter, 282 F. Supp. 2d 180, 187 (S.D.N.Y. 2003); see also Mega Tech Int'l Corp. v. Al-Saghyir Establishment, No. 96 Civ. 8711, 1999 WL 269896, at *5 (S.D.N.Y. May 3, 1999) (collecting cases); Triboro Entm't Grp., Inc. v. Filmcat Inc., No. 93 Civ. 6798, 1996 WL 391859, at *2 (S.D.N.Y July 12, 1996). Here, New Asia alleges that Grant negotiated the principal terms of the agreement with Sears over the course of two separate meetings in New York, and the alleged negotiations closely track the purported terms of the overarching contract. Although such negotiations alone are sufficient, the alleged subsequent New York meetings to discuss ongoing business lend further support for the appropriate exercise of personal jurisdiction over Fabrique. See Hoffritz, 763 F.2d at 60; First Wall Street, 1998 WL 338105, at *5. Finally, the "arising from" prong is met because there is an articulable nexus between the alleged contract negotiations and New Asia's claim that Fabrique breached the ensuing contract. See Hoffritz, 763 F.2d at 60; Mega Tech Int'l, 1999 WL 269896, at *5.

A separate due process inquiry is still required even though it is expected to be the rare case where the New York

long-arm statute is satisfied but not due process.  See Licci,
732 F.3d at 170.  The minimum contacts necessary to support a
finding of specific jurisdiction "exist where the defendant
purposefully availed itself of the privilege of doing business
in [New York] and could foresee being haled into court there."
Id. (internal quotation marks omitted).  Because New Asia
alleges that negotiations took place in New York, it would be
foreseeable that Fabrique could be haled into court here.  See
Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158,
167 (2d Cir. 2005).  This is further supported because Sears
admits that she "agreed to meet with [Grant] in [her]
apartment." (Sears Decl. ¶ 16.)  Although this may have been for
Grant's convenience, Sears agreeing to meet in New York shows
that the meeting was purposeful and not merely happenstance.

     As to the reasonableness of this Court's exercise of
specific jurisdiction, relevant factors to consider include
"(1) the burden that the exercise of jurisdiction will impose on
the defendant; (2) the interests of the forum state in
adjudicating the case; [and] (3) the plaintiff's interest in
obtaining convenient and effective relief . . . ." Licci, 732
F.3d at 170.  A defendant must present "a compelling case that
the presence of some other considerations would render
jurisdiction unreasonable." Id. at 173; see also Tymoshenko v.
Firtash, No. 11 Civ. 2794, 2013 WL 1234943, at *5 (S.D.N.Y. Mar.

27, 2013) (characterizing this showing as a "heavy burden"). Fabrique does not present a compelling case because it merely recites the standard without identifying any interests that outweigh those of New Asia's in obtaining relief in New York. See Licci, 732 F.3d at 174 ("[D]efendant has identified no important interests that outweigh those of the plaintiffs and the forum state such that New York's assertion of jurisdiction would be unconstitutional.")  The only interest Fabrique even alludes to is the burden placed on it by commuting from Connecticut.  But, as the Second Circuit has recognized, modern communication and transportation help alleviate this burden even when witnesses and documents are half a world away. See id. (referring to witnesses and documents located as far away as Israel and Lebanon).  Indeed, thousands of people commute every day from Connecticut to do business in the Southern District of New York.  Thus, this Court finds that the exercise of personal jurisdiction is reasonable and comports with the requirements of due process.

New Asia has made a prima facie showing of specific jurisdiction under N.Y. C.P.L.R. § 302.  The Court therefore need not address general jurisdiction under N.Y. C.P.L.R. § 301. Fabrique's motion to dismiss for lack of personal jurisdiction is denied.

### B. Lack of Capacity to Sue

### 1. Legal Standard

New York Business Corporation Law § 1312 provides:

> A foreign corporation doing business in this state
> without authority shall not maintain any action or
> special proceeding in this state unless and until
> such corporation has been authorized to do business
> in this state and it has paid to the state all fees
> and taxes imposed under the tax law or any related
> statute, as defined in section eighteen hundred of
> such law, as well as penalties and interest charges
> related thereto, accrued against the corporation.

N.Y. Bus. Corp. Law § 1312(a).  It also precludes an

unauthorized foreign corporation from maintaining an action in a

federal court located in New York.  See Neth. Shipmortgage Corp.,

v. Madias, 717 F.2d 731, 735 (2d Cir. 1983).  For the purposes

of section 1312, a corporation is presumed to be doing business

where it is incorporated and not New York.  See Storwal Int'l,

Inc. v. Thom Rock Realty Co., 784 F. Supp. 1141, 1144 (S.D.N.Y.

1992).  Thus, it is the defendant's burden to show that the

plaintiff is "doing business" in New York.  See Posadas de

Mexico, S.A. de C.V. v. Dukes, 757 F. Supp. 297, 301 (S.D.N.Y.

1991).  "Doing business" under this statute requires "permanent,

continuous, and regular" intrastate business activity in New

York. Neth. Shipmortgage, 717 F.2d at 736.

In the context of door-closing statutes like section 1312,

the U.S. Supreme Court has distinguished different levels of

intrastate activity that happen incidental to a company's

interstate commerce. See Allenberg Cotton Co. v. Pittman, 419
U.S. 20, 30-34 (1974) (Mississippi door-closing statute).  In
doing so, the Supreme Court has cautioned that a state's
"refusal to honor and enforce contracts made for interstate or
foreign commerce is repugnant to the Commerce Clause." Id. at
34; see also Grand Bahama Petro. Co., v. Asiatic Petro. Corp.,
550 F.2d 1320, 1326 (2d Cir. 1977) ("[A] state "door closing"
statute may not impede a diversity action concerning interstate
or foreign commerce . . . ."); Hongtai Trading Inc. v. Yan, No.
12 Civ. 3683, 2014 WL 1277172, at *3 (E.D.N.Y. Mar. 27, 2014)
("[A] State may not unlawfully interfere with a foreign
company's right to engage in purely interstate commerce.");
Posadas de Mexico, 757 F. Supp. at 301 ("Where a company's
activities within New York are merely incidental to its business
in interstate and international commerce, section 1312 is not
applicable." (internal quotation marks omitted)).  As such, the
section 1312 "doing business" standard is a more exacting
standard than the jurisdictional analysis under § 302 "[b]ecause
of the possibility of an unconstitutional infringement of
interstate commerce . . . ." Storwal Int'l, 784 F. Supp. at
1144.

## 2. Analysis

New Asia is presumed to be doing business in China, where
it is incorporated. See Posadas de Mexico, 757 F. Supp. at 301.

In its complaint, New Asia states that it has its principal place of business in Speonk, New York. (Compl. ¶ 6.)  Fabrique presents no additional evidence, but argues that this admission alone establishes that New Asia is "doing business" in New York for the purposes of N.Y. Bus. Corp. Law § 1312(a).  New Asia does not dispute that it is not authorized to do business in New York; rather, it argues that having its principal place of business in New York is insufficient to show that it is "doing business" in New York.  Courts addressing this issue are split. Compare Quanta Specialty Lines Ins. Co. v. Investors Capital Corp., No. 06 Civ. 4624, 2008 WL 1910503, at *9 (S.D.N.Y. Apr. 30, 2008) ("That [a company] maintains its principal place of business in New York is not enough to constitute systematic intrastate activity under § 1312."), with MK Sys., Inc. v. Schmidt, No. 04 Civ. 8106, 2005 WL 237755, at *4 (S.D.N.Y. Feb. 1, 2005) (treating a plaintiff's allegation that its principal place of business was New York "as an admission that [plaintiff] is doing business in New York"), vacated, 2005 WL 590665 (S.D.N.Y. Mar. 10, 2005) (vacating prior order because plaintiff submitted proof of authorization to do business in New York). There is an obvious intuitive appeal to the argument that a company is "doing business" where it has its principal place of business.  However, the Court holds that the fact that a company

maintains a principal place of business in New York, standing
alone, is insufficient to satisfy section 1312.

As an initial matter, merely maintaining an office in New
York is insufficient to meet the section 1312 "doing business"
standard. See Posadas de Mexico, 757 F. Supp. at 302. Fabrique
argues that a principal place of business is different from a
regular office. While true enough, those differences do not
necessarily rise to the level of "doing business" for the
purposes of section 1312. In averring that its principal place
of business is in New York, New Asia is admitting that its
"nerve center" is located there. See Hertz Corp. v. Friend, 559
U.S. 77, 92 (2010). Thus, according to New Asia, New York is
where its "actual center of direction, control, and
coordination" is located. See id. In adopting the nerve-center
test, the Supreme Court recognized that where "the bulk of a
company's business activities visible to the public take place
in New Jersey, while its top officers direct those activities
just across the river in New York, the 'principal place of
business' is New York." Id. at 96. New Asia appears to be an
appropriate illustration of that principle. According to the
Grant Declaration, all of New Asia's "day-to-day business" is
conducted in Hong Kong and mainland China. (Grant Decl. ¶ 8.)
Grant "oversaw" that business from New York. (Id.)

There is currently no evidence that New Asia entered into any business dealings in New York aside from the alleged contract and negotiations at issue in this case, which are themselves insufficient to rise to the level of "doing business." See Neth. Shipmortgage, 717 F.2d at 740 (noting that "occasional negotiations" and executing the contract at issue in New York are insufficient to satisfy "doing business" under section 1312). Nor is there any evidence that New Asia engaged with any New York companies or New York consumers. Thus, there is nothing to suggest that any of the "direction, control, and coordination" taking place at New Asia's New York office were directed in any meaningful way inward toward New York. Instead, that "direction, control, and coordination" was directed outward toward China and Hong Kong. Indeed, on this record it appears as though nearly all of New Asia's business activities are entirely international in scope. Therefore, New Asia's principal place of business is only incidental to its activity in international commerce, and Defendant has failed to establish that New Asia has conducted "permanent, continuous, and regular" intrastate business activity in New York. Thus, New Asia has the capacity to sue in this Court because it is not "doing business" in New York within the meaning of section 1312.

## C. Motion to Transfer

### 1. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Transfer is only appropriate if (a) the transferee district would be a proper venue and would have had personal jurisdiction over the defendant at the time the plaintiff commenced the action; and (b) transfer is deemed appropriate after "considering the convenience of the parties and witnesses, and the interest of justice." Balance Point Divorce Funding, LLC v. Scrantom, 978 F. Supp. 2d 341, 355 (S.D.N.Y. 2013).

A district court has "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co., v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).  The defendant bears the burden of demonstrating that transfer is appropriate by "clear and convincing evidence." N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113–14 (2d Cir. 2010).  Relevant factors relating to fairness and convenience include:

> (1) the plaintiff's choice of forum, (2) the convenience
> of witnesses, (3) the location of relevant documents and

> relative ease of access to sources of proof, (4) the
> convenience of parties, (5) the locus of operative
> facts, (6) the availability of process to compel the
> attendance of unwilling witnesses, [and] (7) the
> relative means of the parties.

D.H. Blair, 462 F.3d at 106-07 (internal quotation marks

omitted).  Plaintiff's choice of forum should be given "great

weight." Id. at 107.

### 2. Analysis

As a threshold matter, the District of Connecticut would be

an appropriate venue because it has personal jurisdiction over

Fabrique.  The Court, however, declines to transfer this case

because Defendant has not established that transfer would be

proper.

Fabrique only addresses two of the relevant factors.

First, it asserts that "a substantial part of the events or

omissions giving rise to the claim occurred in Connecticut and a

substantial part of property that is subject of the action is

situated in Connecticut," which the Court interprets as

referring to the locus of operative facts. (Def. Mem. 25.)  In a

breach of contract case, the locus of operative facts is "where

the contract was negotiated or executed, where it was to be

performed, and where the alleged breach occurred." AGCS Marine

Ins. Co. v. Associated Gas & Oil Co., 775 F. Supp. 2d 640, 648

(S.D.N.Y. 2011) (internal quotation marks omitted).  Here, as

discussed, the contract was allegedly negotiated in New York,

which weighs against transfer.  Although not set forth by
Defendant, the remaining considerations do not weigh in favor of
either forum because the contract was to be performed primarily
in China and it is unclear on this record where the alleged
breach occurred.  Even assuming that the breach occurred in
Connecticut, that fact alone would not tip the scales in favor
of transfer.  See Prudential Sec. Inc. v. Norcom Dev., Inc.,
97 Civ. 6308, 1998 WL 397889, at *5 (S.D.N.Y. July 16, 1998)
(noting that where the other factors are split between two fora,
the location of the alleged breach does not necessarily point to
one forum over the other).  This factor thus weighs against
transfer.

Second, Fabrique claims that it would be inconvenient for
potential witnesses to travel to New York from Connecticut.
(Def. Mem. 25.)  It does not, however, provide the names of any
witnesses or explain how it would be inconvenient for them to
travel to New York.  Thus, this factor does not weigh in
Fabrique's favor.  See Medien Patent Verwaltung AG v. Warner
Bros. Entm't, Inc., 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010).
Moreover, Connecticut neighbors New York, so the inconvenience
to witnesses would be minimal.  See Weisman Celler Spett &
Modlin, P.C. v. Trans-Lux Corp., No. 12 Civ. 5141, 2012 WL
5512164, at *3 (S.D.N.Y. Nov. 14, 2012).  Therefore, even if

Fabrique had identified witnesses, this factor would not outweigh the "great weight" given Plaintiff's choice of forum.

As neither factor presented by Fabrique weighs in favor of transfer, the Court finds that Fabrique has not carried its burden to demonstrate that transfer would be appropriate. Having found that exercise of personal jurisdiction is appropriate on this record, the Court also rejects Fabrique's argument that serious doubts about personal jurisdiction make transfer proper.  Fabrique's motion for transfer of venue is therefore denied.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction and lack of capacity to sue, and, alternatively, for venue transfer is denied.

**SO ORDERED.**

Dated:      New York, New York
            August 13, 2014

                                    JOHN F. KEENAN
                              United States District Judge